**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CIV-24467-KMM**

**THOMAS RAYNARD JAMES,**

**Plaintiff,**

**v.**

**MIAMI-DADE COUNTY, a Political Subdivision and Municipal Corporation of the State of Florida.**

**Defendant.**
_____________________________________________ /

**MIAMI-DADE COUNTY'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Miami-Dade County, pursuant to Federal Rule of Civil Procedure 11, moves for sanctions and an award of attorneys' fees against Plaintiff Thomas Raynard James and his counsel, for knowingly incorporating and relying upon allegations in their Fifth Amended Complaint which have no factual basis and are confirmed to be false. As a result, the Court should sanction Plaintiff by dismissing the Fifth Amended Complaint with prejudice and award the County the attorneys' fees it has incurred since the filing of the Fifth Amended Complaint.

**INTRODUCTION**

In his Fifth Amended Complaint, Plaintiff introduced new facts to support his theory of liability—already dismissed by this Court, *see* [ECF No. 183]—that Miami-Dade County recognized the need for training on photo identification procedures yet failed to train its officers on those procedures. Plaintiff's theory depends in large part on alleged training keys authored by the International Association of Chiefs of Police ("IACP") that he also claims were distributed to

the County prior to 1990. Specifically, paragraph 322 of the Fifth Amended Complaint identifies these keys as:

(a) Training Key No. 67 – "Witness Perception" (1965);

(b) Training Key No. 135 – "Photographic Identifications" (1975);

(c) Training Key No. 159 – "Lineups and Photographic Identifications" (1978);

(d) Training Key No. 202 – "Eyewitness Identification" (1982);

(e) Training Key No. 225 – "Conducting Identification Procedures" (1985); and

(f) Training Key No. 302 – "Photographic Identifications Revisited (1989)

(all training keys referenced in paragraph 322 referred to collectively as the "Keys"). Plaintiff then recites sentences of content supposedly detailing what each Key said, including instructions for police officers and even caselaw.

Plaintiff's theory has a problem, though: ***Other than Training Key No. 67, the Keys, as Plaintiff describes them, do not exist***. Through discovery and independent investigation, the County was able to procure the Keys bearing the numbers Plaintiff references. The actual Keys cited in the Fifth Amended Complaint, which the County has attached as ***Composite Exhibit 1***, are neither titled what Plaintiff falsely claims, nor do they have anything to do with photo array procedures and composition. Rather, these Keys address completely unrelated topics, including subjects as far-flung as "Glass as Evidence" and "Epilepsy Recognition and First Aid."

For four months now, Plaintiff inexplicably relied upon the non-existent Keys in support of his lone remaining claim. By doing so, he has perpetuated a fraud on defense counsel and, more importantly, the Court. The Keys, which are referenced in paragraphs 316-325 of the Fifth Amended Complaint, were part of Plaintiff's argument in response to the County's Motion to Dismiss. IACP materials were even mentioned by Plaintiff in open court at a discovery hearing on

March 17, 2026, as a basis to re-depose the County's Rule 30(b)(6) witness. But when the County requested that Plaintiff produce the very Keys he so extensively relies on, he finally admitted he does not have them. Equally as bad, when the County asked for documentation to support his allegations about what the Keys said, Plaintiff interposed a disingenuous objection that he did not know what the word "support" means.

Plaintiff has demonstrably relied upon allegations which he and his counsel knew lacked a factual basis in violation of Rule 11. Such conduct warrants sanctions.

## PROCEDURAL HISTORY

1. Plaintiff filed this action on March 27, 2024. [ECF No. 1].

2. On November 30, 2025, Plaintiff filed his Fifth Amended Complaint. [ECF No. 193].

3. The Fifth Amended Complaint contains new allegations under a heading titled "Law Enforcement Policymakers Recognized the Need for Training Before 1990," which refers to training keys published by the International Association of Chiefs of Police ("IACP"). *Id.* ¶ 317.

4. Paragraph 322 of the Fifth Amended Complaint alleges that the following training keys gave law enforcement actual notice of the need for training on photo lineup procedures: (a) Training Key No. 67 – "Witness Perception" (1965); (b) Training Key No. 135 – "Photographic Identifications" (1975); (c) Training Key No. 159 – "Lineups and Photographic Identifications" (1978); (d) Training Key No. 202 – "Eyewitness Identification" (1982); (e) Training Key No. 225 – "Conducting Identification Procedures" (1985); and (f) Training Key No. 302 – "Photographic Identifications Revisited (1989). *Id.* ¶ 322.

5. The Fifth Amended Complaint alleges that Training Key No. 135 "was the first widely distributed training module to instruct law enforcement officers on how photo arrays should

be constructed," provided "guidance on how to properly construct and administer photo arrays," and trained officers on witness admonitions and "the need to document the exact words spoken by the witness when making an identification." *Id.* ¶ 322(b).

6. The Fifth Amended Complaint alleges that Training Key No. 159 "directly discussed" U.S. Supreme Court cases including "*Wade, Gilbert, Stovall,* and *Simmons*," and instructed that these cases "control how police photo lineups should be conducted[.]" [CITE]. According to Plaintiff, it also "provided training for officers on the requirement for simultaneous documentation during lineups." *Id.* ¶ 322(c).

7. The Fifth Amended Complaint alleges that Training Key No. 202 instructed officers on research related to perception and memory, and "the effect of stress, lighting, exposure duration, weapon focus, cross-racial ID issues and memory decay." *Id.* ¶ 322(d).

8. The Fifth Amended Complaint alleges that Training Key No. 225 "taught officers and administrators standardized identification techniques," and gave instructions on witness admonitions, filler selection, and how to document witness remarks. *Id.* ¶ 322(e).

9. The Fifth Amended Complaint alleges that Training Key No. 302 "updated police officers on proper lineup procedures based on the Supreme Court's opinions in *Manson* and Biggers," provided instruction on certain "reliability factors," and advised on filler photo selection. *Id.* ¶ 322(f).

10. Despite describing the Training Keys in great detail, they were not attached to the Fifth Amended Complaint.

11. On February 19, 2026, the County moved to dismiss the Fifth Amended Complaint, noting that it had been unable to verify the contents of any key besides Key Number 67, which had

been produced in discovery and was attached to the motion. *See* [ECF No. 218 n.4; ECF No. 218-1].

12. On February 23, 2026, the County served Plaintiff with a Request for Production seeking, *inter alia*, copies of the Keys referenced in paragraph 322. *See* County's Fifth Request for Production to Pltf., attached as ***Exhibit 2***, Request No. 3.

13. On March 5, 2026, Plaintiff responded to the County's Motion to Dismiss, referencing the Keys as part of its notice theory, describing them as "periodic bulletins" issued by the IACP prior to 1990 and referring back to paragraphs 316-25 of the Fifth Amended Complaint. [ECF No. 219 at 5-6]. Notably, Plaintiff did not attach the Keys to his Response.

14. On March 12, 2026, the County replied to Plaintiff's response, again noting that Plaintiff had failed to verify the Keys' contents. *See* [ECF No. 225 at 9 n.2].

15. On March 17, 2026, the parties appeared before Magistrate Judge Elfenbein on Plaintiff's request for a 12th deposition in this case, which would be a second deposition of the County's Rule 30(b)(6) representative. During the hearing Plaintiff argued, in part, that IACP training materials would be an area of inquiry at deposition.

16. On March 25, 2026, Plaintiff responded to the County's Fifth Request for Production. A copy of that response is attached as ***Exhibit 3***.

17. In response to the County's request for production of Training Keys No. 67, 135, 159, 202, 225, and 302, Plaintiff produced **only** Training Key 67, which had already been produced in discovery. [ECF No. 218-1]. As to the remaining keys, Plaintiff confessed that he "is not in possession of Training Keys 135, 159, 202, 225, and 302[.]" Ex. 3 at 3.

18. Plaintiff incorporated into his response the following partial email exchange between Plaintiff's counsel and the IACP, dated March 2, 2026:

**From:** David Snively <snively@theiacp.org>
**Date:** Monday, March 2, 2026 at 12:23 PM
**To:** David Rudolf <dsr@pr-lawfirm.com>
**Cc:** Katrine Malakhova <malakhova@theiacp.org>
**Subject:** Re: Historical IACP Training Keys on Eyewitness ID

Good evening, Mr. Rudolf,

Thanks very much for reaching out regarding IACP Training Keys. The IACP stopped producing Training Keys in 2015 and removed them from circulation entirely in 2024. I am sorry, but I cannot confirm that the specific keys you reference in your email do or do not exist in any form at this time.

Respectfully,

**David T. Snively, Ph.D.**
*Assistant Director, Policy & Governance*
**International Association of Chiefs of Police**
3030 Potomac Avenue Ste. 600, Alexandria, VA 22305
**Direct:** 703-647-7398 | **Main Line:** 800-THE-IACP

*Id.*

19. Notably, this e-mail exchange between Plaintiff's counsel and the IACP post-dates the County's request for production seeking the Keys.

20. As to the County's other requests seeking documents supporting the allegations of paragraphs 320, 322, and 350, all of which relate to the Keys, Plaintiff categorically objected and refused to produce documents, claiming not to understand the meaning of the word "support" and broadly invoking work product. *Id.* at 2-5.

21. On March 27, 2026, Magistrate Judge Elfenbein issued a seventeen-page order denying the second 30(b)(6) deposition. [ECF No. 229].

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 11 provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> [. . .]

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b). A court's decision to award sanctions under Rule 11 is reviewed for abuse of discretion. *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941 (11th Cir. 2022). When a Court determines that Rule 11 has been violated, it may impose sanctions on the lawyer, the party, or both. Fed. R. Civ. P. 11(c)(1).

Rule 11 is designed, in part, to address frivolous factual claims. "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis, because it is supported by no evidence or only by 'patently frivolous' evidence." *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F.Supp.2d 1299, 1307 (S.D. Fla. 2011) (quoting *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990)); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) ("Rule 11 sanctions are proper when a party files a pleading that has no reasonable factual basis") (cleaned up).

A party may not escape his Rule 11 obligations by making allegations "on information and belief." To the contrary, the Advisory Committee to the Federal Rules of Civil Procedure has made clear that even when allegations are made on information and belief, a litigant is "obligat[ed] to conduct an appropriate investigation into the facts that is reasonable under the circumstances[.]" Fed. R. Civ. P. 11, 1993 advisory committee's note. Further, "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." *Id.*; *see also Blackwell v. Amchem Prods., Inc.,* 108 F.R.D. 287, 289 (S.D. Ga. 1985) (noting that "[i]f an attorney subsequently becomes aware of information or evidence which reasonably leads him to believe that there is no factual or legal basis for his position, giving due regard to the standard of proof, then that attorney is under an obligation to re-

evaluate the earlier certification of the cause[.]") (quoting *Woodfork By and Through Houston v. Gavin*, 105 F.R.D. 100, 104 (N.D. Miss. 1985)); *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539-CV, 2025 WL 643208, at *4 (S.D. Fla. Feb. 25, 2025), *appeal granted in part on other grounds*, No. 17-22539-CV, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025) (collecting cases).

As such, Rule 11 includes a "continuing obligation to make inquiries, and thus the rule allows sanctions when an attorney continues 'insisting upon a position after it is no longer tenable.'" *Battles v. City of Ft. Meyers*, 127 F.3d 1298, 1300 (11th Cir. 1997) (quoting Fed. R. Civ. P. 11, 1993 advisory committee's note). Consistent with this obligation, a party may not "advocat[e] positions contained in [previously filed] pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11, 1993 advisory committee's note; *In re BankAtlantic Bancorp.*, 851 F. Supp. 2d at 1307 (holding that by "later advocating" a position first set out in a pleading or motion, the attorney certifies it meets the Rule 11 standard). The Eleventh Circuit has expressly recognized the ongoing duty of parties and counsel to assess and re-assess the grounds for their assertions: "Under the 1993 amendments to Rule 11, a party is responsible for reaffirming all contentions in papers filed before the court and informing the court of any changes of circumstances that would render a contention meritless." *Attwood v. Singletary*, 105 F.3d 610, 612 (11th Cir. 1997) (affirming sanctions award).

The Eleventh Circuit recently affirmed a district court order awarding sanctions under Rule 11 where the movant argued the plaintiff failed to allege a sufficient factual and legal basis for his claim. *Carey v. Kirk*, Case No. 25-10866, slip op. at 9 (11th Cir. Mar. 26, 2026), a copy of which is attached hereto as ***Exhibit 4***. The appellate court affirmed, nothing that the "district court

provided Appellants' counsel with ample time to investigate and produce relevant facts," but the claims were frivolous nonetheless. *Id.*

This Court has also held a lawyer accountable for filing something he knew lacked evidentiary support. *Estrada v. FTS USA, LLC*, No. 14-CV-23388, 2018 WL 1811907, at *2 (S.D. Fla. Mar. 16, 2018) (Moore, J.). The Eleventh Circuit affirmed this Court's order sanctioning an attorney under Rule 11, reasoning that the lawyer was to blame for not withdrawing his FLSA client's allegation that he was "never" paid overtime wages when he knew that was not the case. *Estrada v. FTS USA, LLC*, 810 F. App'x 743, 745 (11th Cir. 2020). The Court affirmed sanctioning the lawyer because his actions forced the employer to defend against a false accusation. *Id.* This is exactly the posture in which the parties find themselves here, and the Court should, like it did in *Estrada*, sanction Plaintiff and his lawyers for their misconduct.

The Court has discretion as to the appropriate sanction for a Rule 11 violation, including attorneys' fees. Fed. R. Civ. P. 11(c)(4). In cases where a party relied on a fabricated exhibit, even the sanction of dismissal is available. *Id.*; *see Boatman v. Budz*, No. 2:10-CV-743-FTM-29, 2012 WL 3151543, at *4 (M.D. Fla. Aug. 2, 2012) (dismissing case without prejudice and barring plaintiff from relying on exhibit which Court found was either fabricated or backdated by Plaintiff). Here, dismissal is warranted because Plaintiff fabricated the content of the Keys, as the Court can see by comparing Plaintiff's misrepresentations in the Fifth Amended Complaint with the content of the actual Keys in Exhibit 1.

This is a clear-cut case for attorneys' fees as well. Plaintiff's theory of liability in the Fifth Amended Complaint relies extensively on five training Keys that are completely made up. Because five of the six Keys do not say what Plaintiff represents they say, no attorney could conclude that the allegations related to them have any evidentiary basis, and those portions of the Fifth Amended

Complaint which rely on them are frivolous. *See In re BankAtlantic Bancorp*, 851 F. Supp. at 1307 (holding that factual claim is frivolous if supported only by "patently frivolous" evidence).

In filing the Fifth Amended Complaint, Plaintiff's lawyers violated the plain language of Rule 11, which requires attorneys to certify that their filings contain factual contentions that have or will have factual support after reasonable opportunity for discovery. *See* Fed. R. Civ. P. 11(b)(3). The Fifth Amended Complaint devotes two pages to detailing each Key's supposed contents, down to listing cases cited therein and describing specific instructions the IACP purportedly issued in the Keys, all of which, Plaintiff maintained, related to photo array procedures. [ECF No. 193 ¶ 322(a)-(f)]. All of it is fictional, though, as the actual Keys bearing those numbers do not relate to that topic. The submission of false allegations by Plaintiff's counsel is sanctionable under Rule 11.

While Rule 11 does not require a finding of deliberate malfeasance, fraud, or fabrication of evidence, the notion that multiple pages of made-up content happened accidentally belies the history of this case. Further dispelling any notion of mistake is the fact that the comprehensive July 24, 2025, report of Plaintiff's own eyewitness identification expert, Dr. Jennifer Dysart, makes no mention of the five suspicious Keys. *See* [ECF No. 187-31]. Dr. Dysart, who Plaintiff holds out as one of the foremost experts in the country on eyewitness identification, mentioned only the 1965 Key (Training Key 67) in her report. Not surprisingly, that is the only Key Plaintiff was able to produce in discovery. Similarly, at her deposition on August 19, 2025, Dr. Dysart extensively discussed IACP training keys. However, she only discussed Training Keys No. 67 and 414 (issued in 1992) as relevant to eyewitness identification. She did not mention any of the other Keys described in the Fifth Amended Complaint. In fact, she expressly denied uncovering any other pre-1990 training keys, even when she specifically asked a colleague for pre-2010 training

keys related to eyewitness identification. *See* [ECF No. 187-18 at 79:14-22; 88:4-14]. Thus, months prior to filing the Fifth Amended Complaint, Plaintiff and his counsel knew or should have known the five subject Keys did not exist because clearly their own expert didn't. If the Keys existed, Plaintiff's expert would have found them and relied on them to render her opinion and she would have discussed them at deposition.[1]

Despite all this, Plaintiff continued to rely on the Keys even after Dr. Dysart's deposition. On March 5, 2026, in responding to the County's Motion to Dismiss, Plaintiff bolstered his notice theory by referring to "training materials published by the International Association of Chiefs of Police" and referred to "periodic bulletins" issued by the IACP prior to 1990, specifically citing to paragraphs 316-25 of the Fifth Amended Complaint. [ECF No. 219 at 5-6]. Then, on March 17, 2026, Plaintiff's counsel again referenced the IACP at a hearing before Magistrate Judge Elfenbein. Specifically, counsel argued that publications by the IACP, as alleged in the Fifth Amended Complaint, supported Plaintiff's notice theory and justified an additional Rule 30(b)(6) deposition of the County's representative.

Plaintiff's conduct is sanctionable. As the Eleventh Circuit has held, a party violates Rule 11 where he "insist[s] upon a position after it is no longer tenable," *Battles*, 127 F.3d at 1300, and is obligated to "inform[] the court of any changes of circumstances that would render a contention meritless," *Attwood*, 105 F.3d at 612. Plaintiff and counsel failed to fulfill that obligation. On February 19th, the County filed its Motion to Dismiss, noting that it had been unable to verify the

---

[1] The day of this filing, Plaintiff submitted updated declarations from two of his experts. Copies of those declarations are attached as ***Exhibits 5*** and ***6***. Not surprisingly, neither one references the five Keys under scrutiny here.

contents of the Keys. [ECF No. 218 n. 4]. That would have been Plaintiff's first opportunity to abandon this invented theory of his. On February 23rd, the County served discovery asking that the Keys be produced—another chance to fall on the sword and confirm that they do not exist. Then, on March 12th, in its reply to Plaintiff's response to the Motion to Dismiss, the County again noted that Plaintiff had failed to verify the Keys' contents, *see* [ECF No. 225 at 9 n.3], after which Plaintiff still did nothing. Despite having been advised at least three times prior to this motion that the County had concerns about the veracity of paragraph 322 of the Fifth Amended Complaint, Plaintiff and his counsel relied on the non-existent Keys on March 5, 2026 and March 17, 2026.

Finally, on March 25, 2026, Plaintiff's response to the County's Fifth Request for Production confirmed the baselessness of his allegations concerning the Keys. After four months of relying on the Keys, Plaintiff finally confessed to not having them. *See* Ex. 3 at 3. Which is of course no surprise given that they do not exist in the form Plaintiff proffered. Worse yet, and further indicative of awareness, when given the opportunity to explain what support exists for his detailed descriptions of the Keys, Plaintiff instead interposed a frivolous objection purporting not to understand the meaning of the word "support." It is apparent that Plaintiff did not respond to these requests to produce because Plaintiff has nothing to produce. His allegations regarding the Keys are entirely fabricated. And yet, Plaintiff still continues to rely on them in support of his *Monell* claim.

## CONCLUSION

From the outset, Plaintiff's Fifth Amended Complaint has included frivolous factual allegations based on "patently frivolous" evidence. *See In re BankAtlantic Bancorp*, 851 F. Supp. 2d at 1307. Five of the six Keys on which Plaintiff relies were not located by or relied upon by Plaintiff's experts. This is because Plaintiff made them up. The actual numbered training Keys

referred to in the Fifth Amended Complaint deal with subjects wholly irrelevant to this case. When asked to produce Keys that reflect what he claims they do, Plaintiff admitted he does not have them and hid behind objections to avoid explaining that his allegations about IACP Keys lack any foundation.

The bottom line is simple: The Keys as Plaintiff portrays them do not exist and Plaintiff's assertion otherwise lacks the evidentiary support required by Rule 11. The assertion and maintenance of baseless contentions like these is precisely what Rule 11 is designed to prevent, and Plaintiff and his counsel should be sanctioned.

The Court should dismiss the Fifth Amended Complaint with prejudice as a sanction, and enter an award against Plaintiff and his counsel for the attorneys' fees incurred by the County since the filing of the Fifth Amended Complaint.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Counsel for Defendant invited conferral on the motion via email on March 27, 2026. By not responding to counsel's email and not withdrawing the baseless allegations, Plaintiff has conveyed that he does not agree to the relief sought herein.

**CERTIFICATE OF COMPLIANCE WITH SAFE HARBOR PROVISIONS**

Counsel for Defendants certify that this Motion was served, via e-mail, on Plaintiff's counsel at dsr@pr-lawfirm.com, Spf@pr-lawfirm.com, natlie@Figgerslaw.com, and ACohn@wwhgd.com, on March 27, 2026, which is at least 21 days prior to filing, pursuant to the safe harbor provisions required by Federal Rule of Civil Procedure 11(c)(2).

Dated: April 24, 2027

Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, FL 33128

By: /s/ *Erica Zaron*
Erica S. Zaron, Esq.
Florida Bar No. 0514489
Assistant County Attorney
Telephone: (305) 375-5151
Facsimile: (305) 375-5611
E-mail: zaron@miamidade.gov
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on April 27, 2026, on Plaintiff's counsel via CM/ECF.

s/ *Erica Zaron*
Erica S. Zaron