**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24467-MOORE/Elfenbein

**THOMAS RAYNARD JAMES**,

Plaintiff,

v.

**DETECTIVE KEVIN CONLEY**, *et al*,

Defendants.
_______________________________________________/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR RULE 11 SANCTIONS**

**THIS CAUSE** is before the Court on Defendant, Miami-Dade County's ("Defendant") Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 and Incorporated Memorandum of Law (the "Motion for Sanctions"), ECF No. [237]. Plaintiff Thomas Raynard James ("Plaintiff") filed a Response to the Motion (the "Response"), ECF No. [242]. Defendant thereafter filed a Reply in Support of the Motion (the "Reply"), ECF No. [247].

The Honorable K. Michael Moore referred the Motion for Sanctions to me "to take all necessary and proper action as required by law." *See* ECF No. [258]. Having reviewed the briefing and the record in this case, the undersigned recommends that the Motion for Sanctions, **ECF No. [237]**, be **DENIED**, and that Plaintiff's request for fees and striking the Motion, contained in **ECF No. [242]**, likewise be **DENIED**.

## I. BACKGROUND

This case arises from Plaintiff's wrongful conviction for the 1990 murder of Francis McKinnon, which the Circuit Court of the Eleventh Judicial Circuit vacated on April 27, 2022 — nearly 32 years later. Dorothy Walton, who was an eyewitness to the murder and who identified

Plaintiff at trial as the shooter, recanted her identification approximately three decades later. After Ms. Walton's retraction was brought to the attention of the State Attorney's Office, Plaintiff's conviction was vacated and he sued.

In the Fifth Amended Complaint, filed on November 30, 2025, Plaintiff filed claims against Detective Kevin Conley and Detective Charles McCully individually under 42 U.S.C. § 1983 for denial of a fair criminal proceeding in violation of the Due Process Clause of the Fourteenth Amendment (Count 1); federal malicious prosecution and seizure in violation of the Fourth Amendment (Count 2); and deprivation of liberty and denial of fair criminal process in violation of the Due Process Clause of the Fourteenth Amendment (Count III); and he filed a claim against Defendant for failure to adequately train pursuant to *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978) (Count IV). *See* ECF No. [193]. Following summary judgment briefing, the Court determined that Conley and McCully were entitled to qualified immunity on Counts I, II, and III, granting summary judgment in their favor. *See* ECF No. [215]. The only claim that currently remains is Count IV against Defendant.

Plaintiff's new theory of liability asserts that Defendant recognized the need for training regarding photo identification procedures but failed to train its police officers on these procedures. *See* ECF No. [237] at 1-2. Specifically, in ¶322, Plaintiff alleges upon information and belief that the International Association of Chiefs of Police ("IACP") distributed the following training modules to law enforcement agencies across the country that addressed issues on photographic line-ups: Training Keys (the "Keys") Nos. 67, "Witness Perception" (1965); 135, "Photographic Identifications" (1975); 159, "Lineups and Photographic Identifications" (1978); 202 "Eyewitness Identification" (1982); 225, "Conducting Identification Procedures" (1985); and 302, "Photographic Identifications Revisited" (1989). *See* ECF No. [193] at ¶322. The existence of

Key Nos. 135, 159, 202, 225, and 302 was disputed shortly after Plaintiff filed the Fifth Amended Complaint and up until Plaintiff filed his Motion for Leave to Amend Complaint to Correct Paragraph 322, ECF No. [245], to remove these Keys from the pleading because he could not verify the descriptions alleged in the Fifth Amended Complaint. *See* ECF No. [245] at 2. These Keys are the subject of the Motion.

## II. PROCEDURAL HISTORY

Defendant moves for sanctions on the grounds that Plaintiff violated Rule 11 through his demonstrated reliance on allegations he and his counsel knew lacked factual support. *See* ECF No. [237] at 3. Defendant asserts that sanctions in the form of dismissal of the Fifth Amended Complaint with prejudice and attorney's fees incurred since Plaintiff filed the operative pleading are warranted because Plaintiff falsified the content of the Keys in the operative pleading's factual allegations and "extensively" relies on the Keys to support his liability theory. *See id*. at 9-10, 13. Defendant argues that the actual Keys contain content completely different from what is asserted in the Fifth Amended Complaint. *See id*; *see also* ECF No. [237-1]. Because of this, Defendant maintains, no attorney could find that the allegations related to the Keys have "any" evidentiary basis, making the related sections of the Fifth Amended Complaint frivolous. *See id*. at 9-10. Moreover, Defendant asserts that Plaintiff's counsel violated Rule 11's requirement that attorneys certify their filings have factual contentions that are or will be supported after reasonable opportunity for discovery. *See id*. at 10.

More specifically, Defendant acknowledges that, while Rule 11 does not require a finding of deliberate malfeasance, the possibility that numerous pages with fabricated content accidentally appeared in the Fifth Amended Complaint contradicts the history of this case. *See id*. Plaintiff's eyewitness identification expert, Dr. Jennifer Dysart, describes only Key No. 67, which is also the

only one Plaintiff produced during discovery. *See id.* at 10. During her August 19, 2025, deposition, Dr. Dysart only testified to Key Nos. 67 and 414 being relevant to eyewitness identification, did not discuss any of the other Keys identified in the Fifth Amended Complaint, and "expressly denied" finding any other Keys dated before 1990, despite specifically asking a colleague for keys related to identification before 2010. *See id.* at 10-11. According to Defendant, this shows Plaintiff and his counsel knew or should have known months before filing the operative pleading that the five Keys did not exist. *See id.* Defendant highlights that Plaintiff continued to rely on these Keys even after Dr. Dysart's deposition. *See id.*

Next, Defendant argues that Plaintiff's conduct is sanctionable because instead of notifying the Court that his position is no longer tenable for failure to find the Keys, he and his counsel continued to assert the invented allegations. *See id.* at 11-12. Defendant notes three additional opportunities post-Dysart deposition that Plaintiff had to abandon his Key-related theory: (1) February 19, 2026 when Defendant filed a motion to dismiss indicating that it could not validate the Keys' content; (2) February 23, 2026, when Defendant served Plaintiff discovery requests for the Keys' production; and (3) March 12, 2026, after Defendant filed its reply to the motion to dismiss indicating that Plaintiff had still not verified the Keys. *See id.* at 11-12. Defendant notes that in Plaintiff's March 25, 2026 Response to Defendant's Fifth Request for Production, he conceded that he did not possess the Keys. *See id.* at 12. Defendant further explains that the real Keys listed in the Complaint address information "wholly irrelevant" to this case. *See id.* at 13.

In the Response, Plaintiff explains that his attorneys reviewed expert materials, case law, internet-based research, and "AI-augmented" research that resulted in secondary-source summaries, one of which corresponded to Key No. 67, which one of Plaintiff's experts had in his files. *See id.* at 5–6. Plaintiff noted the Keys identified through the internet and AI-augmented

research could not be verified because they were copyrighted. *See id*. at 5. He explains that his attorneys made efforts to corroborate the existence of the additional keys identified in the AI-augmented summaries but ultimately were not able to confirm their veracity. *See id*.

Opposing Plaintiff's request for sanctions, Plaintiff argues that the Motion is a mechanism for attacking the merits of his *Monell* claim in the form of a sanctions motion, which is prohibited. *See* ECF No. [242] at 10. Plaintiff insists that Defendant's "clear goal" is to avoid trial on the merits through filing the Motion and that Rule 11 sanctions are generally not decided until the end of a case. *See id*. at 12. Addressing whether Plaintiff violated Rule 11, Plaintiff argues that the allegations at issue, which were based "on information and belief," were appropriate because facts such as why and on what authority Defendant relied when adopting photographic lineup requirements before 1990 was "peculiarly" in its control or knowledge. *See id*. at 12-13. He states that he supported his *Monell* claim by including over 60 paragraphs, including paragraph 322 — the one discussing the Keys — with "significant evidence adduced in discovery and made reasonable efforts to find further support for the allegations." *See id*. at 13. He argues that his "diligent pursuit of evidence" to substantiate the allegations of paragraph 322 is exactly what the case law required and that he continued his search for the five Keys after filing the Fifth Amended Complaint. *See id*. at 13-14. Further, Plaintiff asserts that Defendant is in the best position to know what it relied on in establishing its pre-1990 photo lineup guidelines, so requiring him to allege facts on this issue only based on direct knowledge would be "an unreasonable barrier to court access." *See id*. at 14.

Next, Plaintiff argues that while his counsel sought discovery prior and subsequent to filing the Fifth Amended Complaint, Defendant obtained the Keys on either February 19, 2026 or March 12, 2026, but failed to inform Plaintiff of this before March 27, 2026, so that Plaintiff could "amend

his complaint accordingly."[1] *See id*. at 13. Plaintiff asserts that he did not have a duty to amend the allegations he made on information and belief without the discovery from Defendant and that Rule 11 does not impose a continuing duty to amend a pleading if it was reasonably set forth in the first instance. *See id*. at 15.

Raising a procedural objection, Plaintiff asserts that Defendant violated Rule 11(c)(2), as well as Local Rule 7.1(a)(3), so the Motion must be denied on that basis alone. *See id*. at 17-19. Plaintiff explains that his counsel never received Defendant's email attaching the Motion and that Defense counsel was notified five separate times through bounce-back emails that Plaintiff's counsel was not served with it. *See id*. at 17. Plaintiff asserts defense counsel also had constructive knowledge that Defendant failed to serve the Motion because all four attorneys were silent in response to the email, which was in "stark contrast" to their historic dealings in this case. *See id*. at 17. Plaintiff notes that this silence should have been a signal that they did not receive the email serving the Motion, so Defendant failed to satisfy the Rule 11(c)(2) requirement. *See id*. at 17-18.

Finally, Plaintiff makes his own request for sanctions under Rule 11, arguing that because motions for sanctions are likewise subject to Rule 11 and Defendant advanced the Motion for a combative purpose, Plaintiff should be awarded attorney's fees for having to respond to the "meritless" motion. *See id.* at 20. Plaintiff also asks the Court to strike the Motion's "defamatory" and false allegations from the Court's electronic case filing system. *See id*. at 20.

In the Reply, Defendant notes that Plaintiff moved to amend the Complaint for a sixth time to remove the language regarding the five Keys, which indicates that he does not intend to rely on

[1] Plaintiff also disputes Defendant's assertions that he confessed to not possessing the disputed Keys and that he lodged a bogus objection to Defendant's Fifth Request for Production. *See id*. at 15. Plaintiff says he took immediate action in complying with Defendant's discovery request because he produced Key No. 67, explained that he did not possess the other Keys, detailed his efforts to obtain them, and Defendant should have provided Plaintiff with a copy of the Keys it located. *See id*. at 16-17.

them. *See* ECF No. [247] at 1. Defendant asserts that although Plaintiff's attorneys should have acknowledged that the pertinent allegations in the Fifth Amended Complaint were AI-generated and withdraw them immediately in response to the Motion, they waited to accept responsibility. *See* ECF No. [247] at 1. Because Plaintiff delayed corrective action for approximately two weeks after the Motion was filed, Defendant seeks attorney's fees for having to litigate the issue on the fabricated training Keys. *See id*.

Specifically, Defendant argues that Plaintiff's failure to immediately withdraw the allegations he knew were false is sanctionable conduct. *See id*. His inclusion of unverified AI-generated content fails to satisfy the Rule 11(b)(3) standard. *See id*. Defendant argues that Plaintiff's internet research on pre-1990 IACP training keys for photo array procedures resulted in AI-hallucinations and this cannot be deemed "mere oversight." *See id*. at 2. Defendant argues that Plaintiff concedes three important facts: (1) he did not have the fabricated Keys prior to filing the Fifth Amended Complaint; (2) Dr. Hough, Plaintiff's expert, did not have nor could he obtain the Keys; and (3) the IACP notified Plaintiff that it did not have the keys and could not confirm whether they existed at the time. *See id*. According to Defendant, once Plaintiff's expert and the IACP alerted him that they did not possess nor could they obtain the Keys, that would have been the time to realize those were likely AI-hallucinated and move to remove them from the operative pleading. *See id*. at 2.

Defendant maintains it should still be awarded fees beyond the need to litigate the Motion because it was obligated to address the AI-hallucinated allegations in the motions to dismiss and summary judgment and was forced to serve discovery requests on this exact issue. *See id*. at 3. It notes that had it never filed the Motion, Plaintiff's misrepresentations would have gone undetected and continue to infect both the litigation and the Court's evaluation of the dispositive motions with

"abject falsehoods," and he only conceded the allegations were AI-generated after he was threatened with sanctions.[2] *See id.*

Defendant next denies that it was obligated to produce the real Keys earlier and argues that Plaintiff had multiple opportunities to correct his error but did not, even after Defendant raised its suspicions regarding the non-existence of the Keys numerous times. *See id.* at 4. According to Defendant, even if Plaintiff's argument that the safe-harbor letter was not delivered to his counsel was true, it is clear that he knew by April 8, 2026 — the date Defendant filed its reply supporting the motion to stay — that the Keys were false and Defendant would seek recourse. *See id.* Defendant further asserts that, by the time Plaintiff filed the Response, he knew for weeks, if not months, that the Keys did not exist and the Response itself is devoid of any good-faith basis for the Court to consider the Keys. *See id.* at 5.

Next, Defendant disputes that the Motion is premature because the timing of sanctions is in the trial judge's discretion and this case is closer to the end of litigation than the pleadings stage. *See id.* at 6. Further, it is not necessary to wait until the end of litigation here because Plaintiff's sole surviving claim is his *Monell* claim and the factual support for it has only decreased throughout the course of litigation. *See id.* at 6. And because Plaintiff filed a claim knowing the factual allegations are false, the Court should immediately impose sanctions. *See id.* at 7.

Finally, Defendant asserts that Plaintiff does not address his own misconduct and instead focuses on how his counsel never received the Rule 11 safe-harbor email, which does not change the fact that he relied on fake evidence in litigating this case. *See id.* at 8-9. Defendant asserts that Plaintiff's IT affidavits support that his attorneys received the email but that their respective data limits prevented the ultimate delivery, which is not Defendant's fault. *See id.* at 9. Defendant

[2] In a footnote, Defendant asserts for the first time in the Reply that the Court may award fees as a sanction under its inherent authority pursuant to 28 U.S.C. § 1927. *See* ECF No. [247] at 4, n. 1.

further denies that its attorneys received the bounce-back emails, explaining the message was sent to their assistant's junk email box, leaving them unaware of this situation. *See id*. This issue, according to Defendant, is a distraction from Plaintiff's sanctionable conduct because his counsel received the Motion upon its filing on the docket and still failed to drop its allegations regarding the fake Keys until shortly before the Reply was due, which wasted Defendant's time and resources. *See id*. at 9-10.

## III. LEGAL STANDARD

### A. Rule 11 Sanctions

Federal Rule of Civil Procedure 11 "deters attorneys and litigants from clogging federal courts with frivolous filings." *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1344 (11th Cir. 2022). In relevant part, Rule 11 provides:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

"Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in original); *see also Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (noting that Rule 11 "is intended to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, thus avoiding unnecessary delay and expense in litigation" (quotation marks omitted)). "Rule 11 sanctions are designed to discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Donaldson*, 819 F.2d at 1556 (quotation marks omitted). Indeed, "the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule." *Id.* An attorney's obligations under Rule 11 regarding the contents of pleadings or motions are measured not only when such documents are initially filed, but also when the attorney reaffirms them to the court after learning they lack merit. *See Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022) (citing *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996)).

As further explained below, a party or attorney who runs afoul of Rule 11(b) may be subject to sanctions. *See* Fed. R. Civ. P. 11(c). Importantly though, before seeking such sanctions, the moving party must first comply with the safe-harbor requirement set forth in Rule 11(c)(2), which requires the movant to serve the sanctions motion on the purported violator and allow him 21 days to correct the alleged violation. *See* Fed. R. Civ. P. 11(c)(2); *see also Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1345-46 (11th Cir. 2022) (explaining that the 21-day safe harbor clock starts after movant serves the motion). If the purported violator does not remedy the alleged violation, then the movant may file the motion on the docket. *See* Fed. R. Civ. P. 11(c)(2); *see also Huggins*, 39 F.4th at 1346. This procedural requirement is strict and failure to abide by it

must result in denial of the motion. *See also Mitchell v. Osceola Farms Co.*, 408 F. Supp. 2d 1275, 1280 (S.D. Fla. 2005) ("Because Defendant filed its motion with the court contemporaneously with service to Plaintiffs, the Court must deny Defendant's motion.").

Once the safe-harbor requirement has been satisfied, "Rule 11 sanctions are proper '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.'" *Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463, 465 (S.D. Fla. 2020) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). "In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous — in view of the facts or law — and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *McGreal*, 87 F.3d at 1254. "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Id.*

When evaluating a motion for Rule 11 sanctions, courts use "an objective standard." *See Donaldson*, 819 F.2d at 1556. They look for "reasonableness under the circumstances," which is a standard "more stringent than the original good-faith formula" that used to apply to Rule 11. *See id.* (quotation marks omitted). Courts must "avoid using the wisdom of hindsight" and instead "test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *See id.* (quotation marks omitted). "What constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer and whether he had to rely on a client for information as to the facts underlying the

pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar." *Id.* (alteration adopted, citation omitted).

"Although sanctions are warranted when the claimant exhibits a deliberate indifference to obvious facts, they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). And while the timing of sanctions rests in the district judge's discretion, Rule 11 sanctions "normally will be determined at the end of litigation." *Id.* at 523; *see also* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment ("[I]t is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation."). That is in part because, though "Rule 11 does not mandate a hearing," this Circuit "envision[s] that a trial or other pretrial hearing would give the district court a basis to rule on a sanctions motion," particularly when the parties' factual recitations "are starkly contradictory" and the discovery conducted to that point is "sporadic" and "marginal." *See Didie*, 988 F.2d at 1105.

## IV. DISCUSSION

### A. Defendant Failed to Satisfy the Rule 11(c)(2) Safe-Harbor Requirement

As a threshold matter, the Court first determines whether Defendant satisfied the safe-harbor requirement of Rule 11. To recap, Rule 11(c)(2) requires the moving party to serve a motion for sanctions pursuant to Rule 5 but must not "file[] or present[] [the motion] to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days *after service* or within another time the court sets." Fed. R. Civ. P. 11(c)(2) (emphasis added). And the safe-harbor requirement must be strictly satisfied to obtain

relief. *See Harris v. Virage Cap. Mgmt. LP*, No. 23-CV-23803, 2024 WL 2797400, *4 (S.D. Fla. Mar. 27, 2024).

The Court finds that Defendant failed to satisfy Rule 11's safe-harbor provision. Defendant includes with the Motion a certification that, on March 27, 2026, it served Plaintiff's counsel via email with the Motion at least 21 days prior to filing, identifying the specific email addresses of the attorneys served. *See* ECF No. [237] at 14. Plaintiff asserts that because Defendant's emails were never delivered to the four attorneys, Defendant violated Rule 11(c)(2), so the Motion must be denied. *See* ECF No. [242] at 17. He contends that defense counsel was notified five separate times through bounce-back emails that her message was not delivered to Plaintiff's counsel; yet, she ignored these messages and filed the Motion anyway. *See id*. He further notes that defense counsel had constructive knowledge the Motion was not served because all attorneys addressed in service were silent in response to the email, which contrasted starkly with the "prompt" responses Plaintiff's counsel provided defense counsel throughout the litigation. *See id*. at 17-18. According to Plaintiff, this should have been a signal that his counsel was not served. *See id*. To support his position, Plaintiff attaches affidavits from IT specialists at his attorneys' respective law firms, explaining that the email was never delivered to the inbox of the respective attorneys because its size exceeded the limits established by each firm's email servers, thereby generating a bounce-back email to the sender (in this case, defense counsel's legal assistant) in which the sender was notified of the failed delivery. *See* ECF Nos. [242-1] – [242-3].

Responding to that, Defendant asserts that instead of addressing his own misconduct, Plaintiff focuses on the failed delivery of the Rule 11 safe-harbor email, which does not change that he relied on fake evidence in litigating this case. *See* ECF No. [247] at 8-9. Defendant argues that the affidavits from the IT specialists support that his attorneys received the email but that their

respective data limits prevented the ultimate delivery — something that is not Defendant's fault. *See id.* at 9. It further argues that defense counsel never received the bounce-back emails indicating the message could not be delivered because those emails were sent to their assistant's junk email folder. *See id.* Nonetheless, Defendant contends this issue is a "red herring" because his counsel received the Motion upon its filing on the docket and still failed to withdraw its allegations regarding the fake Keys immediately, which wasted Defendant's time and resources. *See id.* at 9-10.

The Parties are in an interesting procedural conundrum here where defense counsel attempted to serve the Motion via email, Plaintiff's counsel did not receive it, and neither party was aware of the events that had transpired until they each briefed the issues in the Motion. *See* ECF No. [237] at 14; ECF No. [242] at 17-18; and ECF No. [247] at 8-10. Regardless of whether Defendant attempted to serve the email, the fact remains that it was not served within the meaning of the Federal Rules of Civil Procedure — a fact the Court cannot ignore because Rule 11's language is unambiguous that a motion for sanctions "must be served under Rule 5." Fed. R. Civ. P. 11(c)(2). Under Rule 5, service can be done by sending a document "to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing." Fed. R. Civ. P. 5 (b)(2)(E). Rule 5 notes that in either of these events, "service is complete upon filing or sending, **but is not effective if the filer or sender learns that it did not reach the person to be served**." *See id.* (emphasis added).

Here, while Plaintiff's affidavits support that Defendant indeed sent the service email on March 27, 2026, defense counsel also concedes in the Reply that she verified that the bounce-back emails reached her assistant's junk email folder, *see* ECF No. [27] at 9, making service under Rule 5 ineffective. *See* Fed. R. Civ. P. 5(b)(2)(E). And Rule 11 required the Motion be served pursuant

to Rule 5. As evidenced by the Parties' representations to the Court, Plaintiff did not receive the service email, had no knowledge of it before the Motion was filed, and thus the safe-harbor clock did not begin. *See Huggins*, 39 F.4th at 1345-46. Despite Defendant's assertion to the contrary, the fact that Plaintiff's counsel did not receive the service email on March 27, 2026 is not a "total sideshow." *See* ECF No. [247] at 9. It is, in fact, an important procedural safeguard. *See* Adv. Comte Note, 1993 Amendments (explaining that "[t]o stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the [1993] revision provides that the 'safe harbor' period begins to run only upon service of the motion…[but] [i]n most cases, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." ). Indeed, the principles of due process require that "'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'" *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, No. 20-CV-21630, 2022 WL 1203562, at *4 (S.D. Fla. Mar. 29, 2022), *report and recommendation adopted in part*, No. 20-CV-21630, 2022 WL 1793573 (S.D. Fla. June 2, 2022).

As the Court notes, Defendant failed to effectuate service of the Motion on Plaintiff's counsel and, even though it appears to be an unfortunate technological issue, Rule 11(c)(2)'s safe-harbor requirements are strict. *See Mitchell*, 408 F. Supp. 2d at 1280. The very purpose of giving the 21-day notice period is to allow the recipient of the proposed Rule 11 motion to reconsider its position and withdraw the potentially frivolous motion or filing, which would then obviate the need for the moving party to file the Rule 11 motion in the first instance. *See Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010) ("[t]he purpose of Rule 11(c)(2)'s safe harbor provision is to

allow an attorney who violates Rule 11 to correct the alleged violation within twenty-one days without being subject to sanctions."). Here, as Defendant acknowledges, Plaintiff moved to amend the operative pleading to withdraw the fictitious Keys it previously relied on within 13 days of being served with the filed copy of the Motion, which is the first time service was effectuated — well within the 21-day safe harbor. *See* ECF Nos. [247] at 1, 3, 10, and [245]. Even in an ideal world where there are no procedural hiccups, once the offending party corrects the offensive behavior within the safe-harbor period, the motion cannot be filed. *See Huggins*, 39 F.4th at 1346. It follows that, after the offending behavior is corrected within the safe-harbor period, the requested relief in the Rule 11 motion cannot be obtained. Because Plaintiff took active steps to remedy the offensive conduct within the required timeframe, the Motion served its purpose and Defendant is not entitled to sanctions.

Though Defendant asserts in a footnote in the Reply that the Court may impose monetary sanctions under § 1927, it raises this argument too late. Indeed, arguments set forth for the first time in a reply brief are deemed waived. *See Isola Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 21-CV-23114, 2021 WL 6066126 (S.D. Fla. Nov. 15, 2021), *report and recommendation adopted*, No. 21-CV-23114, 2021 WL 6062911, *2 (S.D. Fla. Dec. 22, 2021) (refusing to consider arguments raised for the first time in reply briefing) (collecting cases). And Defendant could have asserted this argument in the Motion, but it did not. *See Reed v. Royal Caribbean Cruises Ltd.*, No. 20-CV-24979-RAR, 2021 WL 4307048 (S.D. Fla. Sept. 22, 2021) (explaining that a reply memorandum may not raise new arguments or evidence, especially where they could have been raised earlier.) (citations omitted). And because Defendant waited until its reply to request sanctions under § 1927, the Court will not consider that request now. For these reasons, the undersigned respectfully recommends that the Motion, **ECF No. [237]**, be **DENIED** for failure to

comply with Rule 11(c)(2)'s safe-harbor requirement. Because the Court decides the issue for procedural reasons, it need not, and does not, reach the merits of the Motion.

Finally, the Court turns to Plaintiff's request for sanctions, specifically an award of attorney's fees, in its Response. *See* ECF No. [242] at 20-21. The Court likewise recommends denying Plaintiff's request for sanctions. In his Response, Plaintiff concedes that the Keys in the Fifth Amended Complaint that are the subject of the Motion were based on unverified AI-generated research, and although Plaintiff does not state so explicitly, the Keys were AI hallucinations. *See id*. at 6-7. As explained below, the Court finds Plaintiff's counsel's use of and repeated reliance on unverified AI-generated research to be irresponsible and in dereliction of counsel's responsibilities as officers of the Court. So while the Court recommends denying the Motion for procedural reasons, it will not reward Plaintiff for the very conduct necessitating the Motion in the first place. For these reasons, the undersigned recommends that Plaintiff's request for sanctions in his Response, **ECF No. [242]**, be **DENIED**.

**B. Plaintiff's Counsel Should be Referred to the Ad Hoc Committee**

While it is important to keep up with today's technological advances in our ever-changing world, attorneys must not forget the ethical duties that come with the privilege of holding a bar license. Plaintiff's counsel, Aaron Michael Cohn, David S. Rudolf, Sonya Pfeiffer, and Natlie G. Figgers, all of whom signed the Fifth Amended Complaint, may have forgotten that obligation. While the Court declines to award Defendant monetary sanctions for the procedural reason noted above, the Court cannot ignore that Plaintiff's counsel admitted to filing the Fifth Amended Complaint without first verifying whether the Keys — documents discovered through unverified AI-generated research — indeed existed and continued their reliance on the Keys for months, despite being unable to confirm their content. *See* ECF No. [242] at 6-11. Indeed, while attorneys

may use AI responsibly and competently, it is critical that they engage in careful supervision, fact-checking, and citation-checking. *See Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *4 (S.D. Fla. May 20, 2025) (explaining that a "basic prerequisite to the filing of any pleading, motion, response, reply, or paper in court is for the drafting and filing attorney(s) to carefully check every case citation, fact, and argument to make sure that they are correct and proper" and that "[a]ttorneys cannot delegate that role to AI, computers, robots, or any other form of technology.").

It should go without saying that "[e]very lawyer is an officer of the court and always has a duty of candor to the tribunal." *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1225 (M.D. Fla. 2004), *aff'd in part, appeal dismissed in part*, 139 F. App'x 144 (11th Cir. 2005) (citing *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 808–09 (11th Cir. 2003)). "Rule 11 reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making a representation[] to the court for an improper purpose." *Id.* (citing Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendments). In addition to Rule 11, lawyers are subject to the same ethical rules whether they are admitted to practice in the Southern District of Florida or admitted *pro hac vice*. *See* S.D. Fla. R. Gov. Att'y Adm. Prac. Peer Rev. & Disc. R. 6(b)(2)(A) ("Attorneys practicing before this Court shall be governed by this Court's Local Rules and by the Rules of Professional Conduct, [referring to Chapter 4 of the Rules Regulating The Florida Bar], except as otherwise provided by specific Rule of this Court."). The comments to Rule 4-1.1 of the Rules Regulating The Florida Bar, which discuss attorney competence, explain that "[t]o maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, engage in continuing study and education, including *an understanding of the benefits and risks associated with the use of technology, including generative artificial intelligence*. . . ." R. Reg.

Fla. Bar, 4-1.1 (emphasis added). Consistent with that requirement of competence, another judge in this District recently explained in the context of the use of artificial intelligence that "counsel who decide to enter a case to litigate must ensure that they carefully evaluate, elucidate, and advocate—not hallucinate. *Versant Funding LLC*, 2025 WL 1440351, at *7.

In this case, Plaintiff's counsel contravened the rules when they, as they admit, chose to include unverified, hallucinated AI-generated content as a basis for allegations in the Fifth Amended Complaint and persisted in that position for months despite knowing they could not verify the information and despite Defendant putting them on notice repeatedly that it could not verify the information either. *See* ECF No. [242] at 6. The attorneys had an obligation under Rule 11 to verify the contents of their pleadings at the outset and also drop the position once it became untenable. *See Gulisano*, 34 F.4th 935, 942–43 (11th Cir. 2022). This kind of careless behavior is no different than including AI-hallucinated case law in court submissions, which the judiciary does not take lightly. *See e.g.*, *Parnell v. Fla. Dep't of Corr.*, 181 F.4th 1209, 1212 (11th Cir. 2026) (granting motion to strike portions of reply brief for inclusion of AI-hallucinated cases and citations, and referring counsel to Committee on Lawyer Qualifications and Conduct); *Akerlund v. Atlas Air, Inc.*, 181 F.4th 1200, 1208 (11th Cir. 2026) (chastising counsel for submitting eight AI-hallucinated cases and referring the matter to the Committee on Lawyer Qualifications and Conduct); *Versant Funding LLC*, 2025 WL 1440351, at *7 (sanctioning counsel who submitted AI-hallucinated case citation in a brief a total of $1,500, requiring completion of CLE on AI addressing ethical and legal obligations, and awarding attorney's fees to opposing counsel); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 497 (D. Wyo. 2025) (revoking *pro hac vice* status for the attorney who drafted the submission containing AI-hallucinated case and additionally

assessing fines); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023) (sanctions for submission of AI-hallucinated cases included assessing a $5,000 fine).

For these reasons, the Court recommends that Plaintiff's counsel who signed the Fifth Amended Complaint, specifically Aaron Michael Cohn, David S. Rudolf, Sonya Pfeiffer, and Natlie G. Figgers, be referred to the Ad Hoc Committee on Lawyer Qualifications and Conduct for determination of any disciplinary action as appropriate.

## V. CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendant's Motion for Sanctions, **ECF No. [237]**, be **DENIED**, and that Plaintiff's request for fees and striking the Motion, in **ECF No. [242]**, likewise be **DENIED**. I further *sua sponte* **RECOMMEND** that counsel for Plaintiff, Aaron Michael Cohn, David S. Rudolf, Sonya Pfeiffer, and Natlie G. Figgers, be **REFERRED** to the Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance of the United States District Court for the Southern District of Florida for a Report and Recommendation as to what, if any, disciplinary action should be taken.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on August 27, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record